## SPARKS et al. v. MINCE.

### No. 5118.

Court of Civil Appeals of Texas. Amarillo.

Feb. 19, 1940.

204

L. G. Mathews, of Floydada, for appellants.

H. D. Payne, of Fort Worth, for appellee.

STOKES, Justice.

This is a suit in trespass to try title filed by appellee, Carrie Mince, against appellants, Mamie Sparks and her husband, G. W. Sparks, and J. M. Mince and his wife, Mattie. J. D. Mince, the husband of appellee, died on November 22, 1929, and appellants, Mamie Sparks and J. M. Mince, together with E. C. Mince, who is not a party to this suit, are the only children of J. D. Mince and appellee. At the time of the death of J. D. Mince he and appellee owned as community property 177 acres of land in Floyd County, a residence and premises in Floydada, a one-half interest in a small stock of merchandise, and some $3,000 in cash. J. D. Mince died intestate and on the 17th of January, 1930, appellants, joined by E. C. Mince and his wife, who lived in California, executed and delivered to appellee a deed conveying to her the 177 acres of land, the town property, and all of their right, title and interest in and to the estate of the father, J. D. Mince, deceased, including property of every kind and character, whether real, personal or mixed. Sometime in 1938, the exact date not shown by the record, E. C. Mince returned from California and from conversations with him, appellants ascertained that he and his mother were contemplating the sale of the property, whereupon appellants executed, filed and caused to be placed upon record in the county clerk's office of Floyd County an affidavit to the effect that the deed which they had executed to their mother conveying their interest in the real and personal property of the estate of their father, while absolute upon its face, was, in reality, a trust agreement and that the real and true consideration for the deed was an agreement of their mother to the effect that she would use the money and personal property in the erection of a comfortable home on the land for her own use during her lifetime and that she would hold the property until her death when it should revert to the three children, viz., the appellants, Mamie Sparks and J. M. Mince, and their brother, E. C. Mince. It appears that this affidavit being of record, interfered with appellee in her negotiations for the sale of the land, whereupon she filed this suit.

Appellants answered by setting up the facts above detailed and sought a judgment decreeing and confirming the trust agreement and securing them in its execution.

The case was submitted to a jury upon a single special issue in which the jury found that at the time of the execution of the deed to appellee, she and the appellants entered into an agreement whereby she was to hold the real estate in trust for the appellants and E. C. Mince.

At the close of the testimony and before the case was submitted to the jury, appellee presented to the court a request for a peremptory instruction, which was overruled, and after the verdict was returned she presented a motion for a judgment in her favor non obstante veredicto. This latter motion was granted by the court and judgment rendered in favor of appellee, Mrs. Carrie Mince, to which appellants duly excepted and from which they have perfected an appeal.

The controlling issue in the case is presented by the assignments of error which complain of the action of the court in granting judgment in favor of appellee notwithstanding the verdict of the jury. It appears from the judgment rendered by the court that the basis of his action in granting appellee's motion for a judgment

non obstante veredicto was the allegations in her motion to the effect that the purpose of the allegations and contentions of appellants was to ingraft upon the deed executed by them and E. C. Mince an express trust and there being no allegations of fraud, accident or mistake inducing the execution of the deed, and the alleged trust being anterior to its execution, appellants were not entitled to a judgment and, therefore, appellee's motion for a peremptory instruction should have been granted. A further ground, as indicated by the recitals in the judgment, is that if the contentions of appellants were sustained and an express trust ingrafted upon the deed, the result would be to change the effect of the deed executed by E. C. Mince, decreeing the same to be a trust in his favor, and this could not be done in the absence of E. C. Mince in some way becoming a party to the suit.

█ The action of the court in this respect is assigned as error and we think the assignments must be sustained. It has consistently been held by the courts of this state since an early day that the peculiar wording of our statute of frauds admits the imposition by parol evidence of an express parol trust upon a deed conveying land notwithstanding the fact that the deed is absolute upon its face, and in such cases, it is not necessary to allege fraud, accident or mistake. James v. Fulcrod, 5 Tex. 512, 55 Am.Dec. 743; Clark v. Haney, 62 Tex. 511, 50 Am.Rep. 536; Robinson v. Faville, Tex.Civ.App., 213 S.W. 316; Faville v. Robinson, 111 Tex. 48, 227 S.W. 938; Tieman v. Dyer, Tex.Civ.App., 114 S.W.2d 669.

██ In cases where the circumstances are such that equity will not decree a rescission or cancellation of the deed, a trust will be imposed, upon proper allegations and proof, in order to prevent the acquisition of property through wrongful means. The breach of a promise to hold property in trust is a species of fraud that will not be tolerated in equity, although originally made in good faith. Our Supreme Court has said that a verbal promise to hold the property in trust is not within the statute of frauds because it is not a promise to convey an interest which then exists in real estate, but, rather, it is made in order to acquire an interest. Faville v. Robinson, 111 Tex. 48, 227 S.W. 938. And it has many times

been held by Texas courts that, in order to enforce such a trust, it is not necessary to allege fraud, accident or mistake. Faville v. Robinson, Tex.Civ.App., 213 S.W. 316, and authorities there cited.

█ For these reasons and others expressed by the courts in the cases above cited and many others, the learned trial judge was clearly wrong in his conclusion that such a trust could not be ingrafted upon the deed in the absence of allegations of fraud, accident or mistake.

█ Appellants strongly insist that, under the verdict of the jury, they are entitled to a judgment and the case should, therefore, be reversed and judgment here rendered in their favor. The allegations of appellants concerning the alleged trust agreement and the testimony of the witnesses as shown by the record are not sufficiently clear to warrant us or enable this court to render judgment. The allegations are that, when the deed was executed, it was agreed between appellants and appellee that the property would be held in trust by appellee for the use and benefit of appellants and E. C. Mince, and that such agreement constituted the real consideration of the deed. Mrs. Sparks, while testifying in the case, was asked by her counsel "What was said about your part of the land?" In answer to this question she said that Mrs. Mince "went ahead to say that it would all come back to we children anyway. She was going to put it on the place in improving the place and she said it would all come back to we children." In answer to other questions she testified that Mrs. Mince said that it would be hers until her death and at her death it would come back to the children. Clearly this testimony refers to the interests being conveyed by the deed which was the undivided one-sixth interest of each of the appellants and the one-sixth of their brother, E. C. Mince. J. M. Mince testified that Mrs. Mince promised him and his sister, Mrs. Sparks, that she would keep "the land" for them and it would revert to them upon her death. He said that was the real consideration for the deed and the reason he executed it. The verdict of the jury was to the effect that the parties agreed that Mrs. Mince would hold the "real estate in controversy herein in trust for the defendants and E. C. Mince." Thus it will be seen that the allegations referred to the "property", which could mean the property con-

veyed by appellants to their mother, viz., an undivided one-half interest, or it could mean the entire title to the land, including the one-half community interest which Mrs. Mince already owned. Likewise the testimony is indefinite in this·respect. It is not certain whether the allegations and proof refer to the entire estate in the land or to that portion only which was conveyed to Mrs. Mince by appellants. Whether the "real estate in controversy" mentioned in the special issue submitted to the jury referred to the entire title or only· to the undivided interest conveyed is likewise uncertain. Appellee sued for the entire title, while the appellants· may have intended their controversy to include only the portion which they had conveyed to her. This matter probably can be made more definite upon another trial.

 E. C. Mince, who was not a party to the suit, but who executed the deed along with appellants, testified that he made no reservations whatever and did not intend to reserve any interest in the property when he executed the deed. He said that he was not claiming any interest or right in the land or its reversion, but it was his intention to convey to his mother all right, title and interest of every kind which he owned in it. Appellee contends that in face of the deed, absolute in form, executed by E. C. Mince, and his testimony to the effect that he did not claim any interest in the land by virtue of the alleged reservation of appellants or otherwise, the court was without power to enforce the alleged trust in his favor. Without passing upon the question of whether or not E. C. Mince was a necessary party to the suit, we suggest that upon another trial the interests of the parties could be adjusted and the issues much more easily determined if E. C. Mince should in some manner become a party to the suit. In the present state of the pleadings, the court would not have been justified in rendering judgment in favor of the appellants for their respective interests under the alleged trust agreement to the exclusion of E. C. Mince and in face of his deed and his testimony it is doubtful if the court would have been warranted in granting the full and only prayer of appellants that the trust be confirmed in favor of E. C. Mince, as well as appellants.

For the errors discussed, the judgment is reversed and the cause will be remanded.