McBRIDE v. BRIGGS et al. (No. 1244.)

(Court of Civil Appeals of Texas. Amarillo.
Nov. 21, 1917. Rehearing Denied
Dec. 19, 1917.)

1. ELECTION OF REMEDIES ⬦10—MISTAKE—
EFFECT—TRUSTS.

That an attorney was mistaken as to the rights of his clients, in filing a suit to establish a lien on land, will not defeat their rights in an action to enforce a parol trust afterwards properly alleged and proved, but only goes to the weight to be given to the evidence.

2. TRUSTS ⬦44(3)—PAROL TRUSTS—SUFFICIENCY OF.PROOF—CERTAINTY.

In proving a parol trust on land, the question is, not as to the amount of the evidence, but does the evidence adduced make it reasonably clear and certain that the verbal trust was made.

3. TRUSTS ⬦44(1)—VERBAL TRUSTS OF LAND
—SUFFICIENCY OF EVIDENCE.

Evidence *held* sufficiently clear and certain to support the finding of a chancellor that there was a verbal trust on land.

4. TRUSTS ⬦35(2), 43(1)—VERBAL TRUSTS—
PAROL EVIDENCE.

A verbal agreement to pay part of the purchase price of lots, for half interest, made prior to delivery of deed to defendant's husband alone as grantee, will subject the property to the confidence or trust confided in defendant's husband, and such agreement can be shown by parol.

5. TRUSTS ⬦35(2)—PAROL TRUSTS—PROOF.

Where it was verbally agreed that title should be taken jointly to lots, it is immaterial, in an action by one to have a trust declared for a portion thereof, that the other had taken a deed in his name alone.

6. LIMITATION OF ACTIONS ⬦103(2)—TRUSTS
—REPUDIATION.

Limitations do not run against an express trust until the trustee repudiates the trust by word or acts which will bring knowledge thereof to the beneficiary.

7. PARTITION ⬦12(3)—HOMESTEAD—"HEIRS"
—CONSTITUTIONAL LAW.

Const. art. 16, § 52, prohibiting partition of homestead by heirs during lifetime of surviving wife, does not apply where the wife buys the children's interest, and partition is prayed by a third party against the wife under a claim that the husband was holding an interest therein in trust; the wife not being an heir.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Heirs.]

Appeal from District Court, Deaf Smith County; Reese Tatum, Judge.

Suit by E. R. Briggs and C. E. Briggs against Lillie McBride for partition of land alleged to be held by defendant in trust. Judgment for plaintiffs, and defendant appeals. Affirmed.

Ben H. Stone and E. T. Miller, both of Amarillo, for appellant. W. H. Russell, of Hereford, for appellees.

HUFF, C. J. This suit was instituted by the appellees, E. R. Briggs and C. E. Briggs, against Lillie McBride, declaring an express trust on the title to two lots in the city of Hereford, the deed to which was taken in the name of Louis McBride, deceased, who was at the time of his death the husband of Lillie McBride, and praying also for a partition.

This is the second appeal of this case. A report of the former appeal will be found in 190 S. W. 1123. The case was tried by the court without a jury. The judgment entry recites:

"It further appearing to the court that plaintiffs and Louis McBride agreed to jointly purchase the property in controversy, to wit, all of lots 7 and 8, block 14, of the town of Hereford, in Deaf Smith County, Tex., as per map or plat of said town, of record in deed records of Deaf Smith county, Tex., to which reference is made, and to take title thereto jointly; that said plaintiffs furnished $1,550 of the purchase price and the said Louis McBride furnished $1,-450 of said purchase price, and that said Louis McBride took the title to said property in his own name, and the legal title to said property is now in Lillie McBride."

The first assignment assails the judgment "because the evidence does not establish said trust with clearness and satisfaction." The assignment is followed by propositions: (1) To establish parol trust the evidence must be clear, unequivocal and convincing; (2) the evidence in the case was not clear, satisfactory, and convincing as to the existence of the trust. Mrs. McBride is the daughter of the appellees, and Louis McBride was the husband of Mrs. McBride, and died before the institution of this suit. The evidence shows, after the marriage of McBride to the daughter, the two families, appellant and appellees, lived together in the same home a great portion of the time, about 25 years, and established a common home. It is also inferable from the evidence that Mrs. Briggs acted for herself and husband in this transaction, and in fact in most of their business matters, and that Louis McBride, during his lifetime, attended to the business for himself and wife. Up to the time of his death, the best of feelings obtained between the two families, and the utmost confidence was reposed in Louis McBride by the appellees. Most of their holdings were in common. However, it appears that in Illinois, where they lived before removing to Hereford, McBride owned about 11 acres of land, which he sold and obtained therefor $1,000. After removing to Hereford, the two families were partners in a restaurant, being equally interested in it, and it appears to have been a profitable business. The property in question was resident property, and Mrs. Briggs and Louis McBride examined it together, and she testified that they agreed to purchase it jointly, each paying one-half of the purchase money; that they did buy it together, agreeing to pay therefor $3,000; that McBride paid $1,000 down and she later paid $1,100. When the deed was taken, she supposed at the time it was in the name of both, but subsequently she learned that it was in the name of McBride alone. The deed is dated April 17, 1909, and recites a cash consideration of $1,750 and the assumption of a note for $1,250, due November 1, 1909. The evidence appears to be undisputed that Mc-

Bride paid $1,000, and a short time afterwards Mrs. Briggs paid the $1,100.

We gather from the evidence that the $2,100 thus paid was applied on the cash payment of $1,750 recited in the deed, and the balance of the payment paid on the note assumed, leaving the balance of the agreed consideration $900 which was afterwards paid out of the profits derived from the restaurant, thereby extinguishing and paying the $1,250 note assumed. It is an uncontroverted fact that this $900 was owned equally between the two parties, and that one-half of the profits which were so applied—that is, $450—belonged to the appellees, thus making $1,550 paid by them as the consideration for the land. The only contention by Mrs. McBride is that her mother gave to her the $1,100 to buy a home. This sum she contends that her mother made them a present of. We do not understand from the evidence that she contends the same as to the $450 out of the $900 paid. Mrs. Briggs, who paid these sums, expressly denies that she gave it to her daughter, but says it was paid under the agreement made before the purchase of the land to buy the lots jointly. The evidence shows that McBride repeatedly acknowledged to Mrs. Briggs and to others that the appellees owned equally with him an undivided interest in the lots. This evidence is clear and satisfactory that the property was purchased under an agreement between the parties and paid for under the agreement to hold the title jointly; but in making the deed it was made to McBride, which he admitted repeatedly he was holding for the benefit of the appellees, and also expressed a willingness to deed to them their interest and doubtless would have done so if death had not intervened. It appears to be the appellant's contention, because Mrs. McBride contradicts her mother and contends that the money was given to her to purchase a home, and also because it appears that the original petition filed in this case alleged that the $1,100 was a debt due the appellees and sought to establish a lien to secure it on the lot, that this renders the evidence unsatisfactory. Mrs. Briggs explains the filing of the original petition, testifying that, after the death of McBride, Mrs. McBride left Hereford and was living in Amarillo, and she was informed she was trying to execute a mortgage on the lots, and, upon learning these facts, she called upon an attorney for the purpose of instituting suit to prevent the giving of this mortgage upon these lots; that she did not go into the facts fully with the attorneys; but that the suit was originally filed more to prevent the giving of the mortgage than for any other purpose.

[1-4] The mere fact that the attorney was mistaken as to the rights of appellee in filing the suit will not defeat those rights, if afterwards properly alleged and proven. These matters go only to the weight to be given to the testimony on the agreement. The true criterion in this case is not, has the trust been established by a particular amount of evidence, but, does this evidence, after being adduced, make it reasonably clear and certain that the verbal trust was made, as alleged? The evidence, if true, clearly established the trust. The court appears to have believed it; the conscience of the chancellor was satisfied by the quantum of proof required under the law. Cuney v. Dupree, 21 Tex. 211; Miller v. Heinbaugh, 153 S. W. 338, 342, in which writ of error was denied; Sachs v. Goldberg, 159 S. W. 92; Ellerd v. Ellison, 165 S. W. 876. The agreement made by McBride and appellee before the lots were purchased or deeded, and which was existent when the title vested by deed to McBride, will subject the title to the trust or confidence reposed in McBride when he received the deed, and this agreement so made could properly be shown by parol. This rule has been steadily followed in this state since James v. Fulcrod, 5 Tex. 511, 55 Am. Dec. 743; Gardner v. Randell, 70 Tex. 453, 7 S. W. 781; Sparks v. Taylor, 99 Tex. 411, 90 S. W. 485, 6 L. R. A. (N. S.) 381; Roach v. Crume, 41 S. W. 86; Brotherton v. Weathersby, 73 Tex. 471, 11 S. W. 505; Watkins v. Watkins, 141 S. W. 1047.

[5] The second, third, and fourth assignments are overruled for the reasons above given. The fact that the parties may have agreed that the deed should be taken in the name of both, and that McBride, in violation of that agreement, took the deed in his own name, does not in our judgment affect the matter. We believe Sparks v. Taylor, above cited, settles the question.

[6] The fifth assignment asserts that the cause of action is barred by the two years' statute of limitation. McBride died May 8, 1914. The second amended original petition was filed May 4, 1916. Up to his death McBride did not repudiate the trust, but repeatedly acknowledged it. All the parties occupied the premises in common and interchangeably as a home. Appellees rented the same, paid taxes out of the common funds, as well as from individual funds. During McBride's lifetime, he and appellee joined in a deed of trust on the lots to a bank; in fact, there is no direct evidence of repudiation by Mrs. McBride unless it was some time after the death of her husband, when she tried to mortgage the lot, and to prevent which these proceedings were instituted. Limitation does not run against an express trust until the trustee repudiates the trust by word or acts which will bring knowledge of such repudiation to the beneficiary. Brotherton v. Weathersby, 73 Tex. 471, 11 S. W. 507; Cooper v. Lee, 75 Tex. 114, 12 S. W. 483; Briggs v. McBride, 190 S. W. 1123. There was no act on the part of McBride inconsistent with the rights of appellees up to the time of his death, and none on the part of his wife until she attempted to mortgage the land, if this can be asserted as a hostile act to the rights of appellees. The trial

court was justified in finding that the action was not barred.

[7] In the concluding argument of appellant, it is asserted the court could not order a partition and sale of the lots. This seems to be regarded by appellant as fundamental for the reason that it was the homestead of Mrs. McBride. The facts show that she and her husband owned, under the agreement to purchase, only $29/60$ of the lots at his death. The evidence further shows that they had two children living who, it is admitted, by agreement after their father's death, conveyed their interest to their mother. The appellant appears to have in mind section 52, art. 16, of the Constitution. The Constitution and statutes prohibit the partition of the homestead between the heirs during the lifetime of the surviving wife so long as she shall elect to use and occupy it as such. She was not an heir of her husband, and she purchased the children's interest. This provision of the Constitution and statutes does not apply in this case. Savings, etc., v. Bristoll, 62 Tex. Civ. App. 387, 131 S. W. 641.

We believe the judgment should be affirmed, and it is, accordingly, so ordered.