**Mrs. L. L. GAUSE, Sr., Appellant,**

**v.**

**Leonard L. GAUSE, Jr. et ux., Appellees.**

No. 11609.

Court of Civil Appeals of Texas.

Austin.

July 10, 1968.

Jungman & Brannon, Robert P. Jungman, Marvin W. Reynolds, Houston, for appellant.

Ed S. Atkinson, Houston, for appellees.

O'QUINN, Justice.

In this lawsuit a son and his wife seek to impress a trust upon ten acres of land held

by his mother which they contend was conveyed by them to his father on the oral representation and promise of his parents that the survivor of them at death would devise the land to the son and his wife.

The ten acres in controversy was an undivided part of 105.5 acres of land in Fayette County, Texas, bought in May, 1945, by Leonard L. Gause, Sr., with money furnished by his son, Leonard L., Jr., who at the time was a minor. The deed was taken in the name of the father. It is undisputed that the total consideration was $7,863, with a cash payment of $2,363 by the son, and the balance of $5,000 payable by an installment note. It is also uncontroverted that the son, in addition to making the down payment, also paid all installments of principal and interest until the unpaid principal balance had been reduced to $2,300 in 1949.

In 1945, when the land was acquired, Leonard, Jr., was 20 years of age and unmarried. By 1949 he was a married man with one child and had decided to move onto the land his parents had bought for him with the money he furnished. Prior to 1949 Leonard, Jr. and his wife lived in Houston. Between the years 1945 and 1949 his parents had occupied the larger of two houses on the acreage, and in 1949 Leonard, Jr. and his wife and child moved into the smaller house.

At the instance of Leonard, Jr., and his wife, the parents in April of 1949 conveyed to their son the entire tract of 105.5 acres, with recitations in the deed acknowledging that the son by virtue of having made all payments of consideration was holder of equitable title and that the deed was made for the purpose of placing legal title in Leonard, Jr.

Simultaneously with this deed, Leonard, Jr., and his wife conveyed to his father the ten acres here in dispute on which was located the large house occupied by the parents. The deed recited a consideration of $2,300, being the unpaid balance of the purchase money for the entire tract.

Leonard, Jr., and his wife contend that they refused to convey the ten acres to his father, with the big house and the only well on the place, until both parents agreed that when the survivor of them died the ten acres woud be returned by devise to Leonard and his wife. They further contend that the value of the property conveyed was $6,000, allocated $1,000 to land, $1,000 to the well and its equipment, and $4,000 to the house on the ten acres.

It is without dispute that the parents by installments paid the recited consideration of $2,300. The parents made mutual wills under which the ten acres were devised by each to the other spouse. The father died in 1961, and his will was probated placing record title in the mother, Mrs. Magdalene Gause.

Leonard, Jr., served as a seaman in World War II. In September, 1949, after the conveyances had been made in April of that year, Leonard, Jr., returned to sea duty. By 1966 Leonard, Jr., had become a merchant marine officer and was frequently absent from the country for extended periods on sea duty. He was on a voyage in the Atlantic Ocean in 1961 when his father died and at the time his father's will was probated. Sometime prior to 1966 Mrs. Magdalene Gause, his mother, moved from Fayette County to Houston, in Harris County, where she owned property.

A brother of Leonard, Jr., died in 1966, and settlement of his affairs was in the hands of his mother, Mrs. Magdalene Gause. In this connection, Mrs. Gause's counsel sought to obtain from Leonard, Jr., a release of Leonard's interest in his father's estate. On advice of counsel, Leonard, Jr., refused to execute the release because he had been advised this might affect his title to the ten acres he had deeded to his father in 1949. Leonard went to see his mother in Houston and sought without success to discuss the matter with her in August, 1966.

In January, 1967, after seeing a "For Sale" sign in front of the ten-acre tract, Leonard, Jr., wrote a letter to the real estate

agent advising of his claim to an interest in the land. In May, 1967, Mrs. Magdalene Gause brought suit to enjoin Leonard, Jr., and his wife from interfering with Mrs. Gause in her efforts to sell the property. Leonard, Jr., and his wife brought suit asserting their claim to title in the ten acres. The trial court upon agreement of the parties consolidated the two causes, and as consolidated the case went to trial in October, 1967.

Leonard Gause, Jr., and his wife, in their petition to impress a constructive or resulting trust on the ten acres, stated they were willing to tender the sum of $2,300 to Mrs. Magdalene Gause as an offer to do equity under their prayer for equitable relief and for judgment impressing a constructive trust upon the property.

The case was tried before the court without intervention of a jury. The trial court entered judgment on December 5, 1967, impressing the ten acres of land and all improvements with a constructive trust in favor of Leonard L. Gause, Jr., and wife, Rita Mary Gause, subject to a life estate in favor of Mrs. Magdalene Gause.

The court found that Mrs. Magdalene Gause and her husband had enhanced the value of the property to the extent of $7,000 through improvements they made "in and prior to 1949." The court charged the property with an equitable lien in favor of Mrs. Magdalene Gause for the lesser of two sums: (1) $7,000 less one-fourth of one percent thereof per month ($17.50 per month) from September 1, 1949, to date of the death of Mrs. Magdalene Gause; or (2) The amount by which the improvements enhance the value of the property at the time of the death of Mrs. Magdalene Gause.

In addition, the property was charged with an equitable lien for the sum of $2,300 for reimbursement of the purchase price. Both the alternate sum and the sum of $2,300 were made payable at the death of Mrs. Magdalene Gause, with interest thereafter but not before.

Mrs. Magdalene Gause is an appellant seeking to have set aside the action of the trial court impressing the property with a constructive trust in favor of her son, Leonard Gause, Jr., and his wife.

The son and his wife are appellants assailing that part of the trial court's judgment charging the property with an equitable lien for improvements made by his parents in and prior to 1949. They have not appealed from the action of the trial court charging the property with a lien for the sum of $2,300.

Mrs. Magdalene Gause urges four points of error. She contends that (1) the pleadings were insufficient as a matter of law to support a judgment imposing a constructive trust; (2) the claim to an interest in the land was barred by the statute of limitations and by laches; (3) the evidence was insufficient as a matter of law to support the imposition of a constructive trust; and (4) the court was not at liberty to disregard the fact that the property was acquired for a good and valuable consideration.

The only point of error presented by Leonard Gause, Jr., and wife in their appeal is that the trial court erred in requiring them to make reimbursement for the value by which the property will be enhanced at the time of his mother's death through the improvements made by his parents.

We consider first the points of error brought by Mrs. Magdalene Gause.

We find no merit in the first point of error urged by Mrs. Magdalene Gause that "The trial court erred in imposing a constructive trust because the pleadings were insufficient, as a matter of law, on which to base such a trust."

Relying upon 22 Tex.Jur.2d, Equity, sec. 22, p. 564, Magdalene Gause argues, "A petition for equitable relief should not only plead affirmatively facts warranting such relief, but should negative all probable matters that might prevent relief." Cases relied on are Port Arthur Housing Co. v. City of Port Arthur, 181 S.W.2d 1017 (Tex.

Civ.App., Beaumont, writ ref., w. o. m.); Kampmann v. Stappenbeck, 45 S.W.2d 761 (Tex.Civ.App., San Antonio, writ dsmd.).

In the amended pleadings upon which Leonard, Jr., and wife went to trial they stated clearly and with certainty all facts connected with transactions between the parties needed to establish, if proved, their claim to a constructive trust against the property in litigation. The theory of their case and the facts necessary to support their theory were sufficiently explicit and complete to apprise the trial court and opposing parties of the basis of their claim against Mrs. Magdalene Gause. The pleadings, as we have observed earlier, stated they were willing to do equity under direction of the court and offered to reimburse the mother for the $2,300 paid by the parents for the ten acres.

In their prayer, Leonard, Jr., and wife asked for "judgment impressing and engrafting a constructive trust against the afore-described 10 acre tract of land giving them fee simple title to such land upon the death of Defendant, Mrs. L. L. Gause, Sr., thereby in effect vesting only a life estate in said land in Mrs. L. L. Gause, Sr." The plaintiffs further prayed "for general relief at both law and in equity."

■ Except in the limited number of instances where relief must be sought by special prayer, as in injunction suits, a general prayer will authorize judgment for any relief the court has jurisdiction to grant, provided the proof under the allegations justifies the relief and the relief is consistent with the theory of recovery stated in the pleadings. McDonald, Texas Civil Practice, secs. 6.25, 6.26, pp. 604–606, and Texas cases cited, including Hardy v. De Leon, 5 Tex. 211; Uvalde Construction Co. v. Lawrence, 93 S.W.2d 213 (Tex.Civ.App., Dallas, writ dsmd.); Jennings v. Texas Farm Mortgage Co., 124 Tex. 593, 80 S.W. 2d 931.

The Supreme Court in the early case of Hipp v. Huchett, 4 Tex. 20, observed that the trial court was "invested with all powers necessary to afford such appropriate relief as may be prayed for, and is also empowered to so frame the judgments of the court as to afford all relief which may be required by the nature of the case and is grantable by courts of law or equity." Under this investment of power, the Supreme Court concluded, "It is impossible that the courts * * * may be invested with more ample authority to afford relief than could be obtained under the prayer for general relief in courts of equity." See also: Hinn v. Forbes, 264 S.W. 190 (Tex.Civ.App., Waco, no writ); Sabens v. Cochrum, 292 S.W. 281 (Tex.Civ.App., Waco, writ dsmd.).

Mrs. Magdalene Gause urges that because "Plaintiffs' petition, as amended, makes no attempt to show the inadequacy of relief in law, the nature and extent of Plaintiffs' damages, or any other fact which would allow the trial court to impose a constructive trust on Defendant's land," the judgment of the trial court "was not authorized by Plaintiffs' pleadings, as a matter of law."

■ The record does not disclose that Mrs. Magdalene Gause either by motion or exception pointed out the defects in pleading of which she now complains. The omissions and faults set out in her brief on appeal were not mentioned in her motion for new trial. By her failure to bring these matters of pleading to the attention of the trial court before hearing on the merits and final judgment, Mrs. Gause has waived defects of form and substance. Rule 90, Texas Rules of Civil Procedure. Equity cases in which this principle was applied by the courts include McKee v. City of Mt. Pleasant, 328 S.W.2d 224 (Tex.Civ.App., Texarkana, no writ); Rivers v. Campbell, 51 Tex.Civ.App. 103, 111 S.W. 190 (San Antonio, writ ref.); American Standard Life Insurance Co. v. Denwitty, 256 S.W.2d 864 (Tex.Civ.App., Dallas, writ dsmd.).

The first point of error is overruled.

Under the second point of error, Mrs. Magdalene Gause urges that the claim

brought by her son and his wife "is barred by the statute of limitations and by laches."

■ The plea of laches, or stale demand, was not pleaded. Mere lapse of time does not raise a presumption of laches, which is an affirmative defense that must be pleaded by the party who relies on it. It is not the burden of plaintiff to anticipate the defense of laches and negative it in the petition. Gulf, Colorado and Santa Fe Railway Company v. McBride, 159 Tex. 442, 322 S.W.2d 492 (1958). As a defense that must be pleaded, laches ordinarily must be determined in the trial on the merits. Culver v. Pickens, 142 Tex. 87, 176 S.W.2d 167.

■ Mrs. Magdalene Gause did file formal pleas invoking the limitation statutes of three, five and ten years.

The trial court made findings incorporated in the judgment "That Mrs. Magdalene Gause, mother of Cross-Plaintiff, Leonard L. Gause, Jr., by repeatedly attempting to sell the property *beginning in the year 1966*, reneged on her promise, and by threatening and attempting to sell the 10 acre tract made it clear that she did not intend to keep her promise and that *the first notice that the son and his wife had that the mother did not intend to keep her promise occurred in 1966 * * *"* (Emphasis supplied).

Leonard, Jr., and wife pleaded that "only in the past few months have the Plaintiffs become convinced and certain of the intention of Mrs. L. L. Gause, Sr. to repudiate her express oral promise to devise said 10 acre tract to L. L. Gause, Jr. That such repudiation of her promise is fraud and would result in unjust enrichment of Defendant to the detriment of Plaintiffs."

At the trial Leonard, Jr. and his wife both testified they did not know Mrs. Magdalene Gause was claiming fee title to the property until they were served with citation in a suit brought by Leonard's mother to enjoin them from interfering with her sale of the land. Mrs. Magdalene Gause contends that Leonard, Jr. and his wife knew, or should have known in 1961, that the parents intended to deal with the property as fee simple owners because the father on his death in 1961 left the property to the mother. It is undisputed that when the father died, Leonard, Jr., was on an extended voyage in the Atlantic Ocean.

Leonard, Jr. testified that doubt about his mother's intentions "with respect to this property" was not created in his mind until the summer of 1966 when he received a letter asking him, in connection with administration of his brother's estate, to release his claim to any part of his father's estate. The next thing that happened to increase his doubts was his discovery a few weeks later of a "For Sale" sign in front of the ten-acre tract. In May of the next year his mother brought suit for injunction.

The promises claimed, to which both Leonard, Jr. and his wife testified, were that the survivor of the parents would devise the ten-acre tract to the son and his wife. By leaving his interest in the land to his wife, the father did not place any impediment in the way of the mother to carry out their promises to devise the property on her death to Leonard, Jr. and his wife. The time of reinvestment under the agreement was at the death of the survivor of the parents. In fact, by leaving the ten acres to his wife, the father legally excluded a possible claim by other children to an interest in the land and enabled the mother under her sole ownership of record title to return the property to Leonard, Jr. by devise in compliance with their promises.

The trial court heard all the witnesses and concluded that the credible testimony amply supported the allegations that the mother's intent not to keep the promises that had induced the conveyance in 1949 was not discovered by the son and his wife until sometime in 1966.

The point of error is overruled.

The third point of error is that "the evidence was insufficient, as a matter of law,

to support the imposition of a constructive trust."

The test is not whether the trust has been established by a particular amount of evidence. The measure is whether the verbal trust as alleged has been shown by proof that is reasonably clear and certain. McBride v. Briggs, 199 S.W. 341 (Tex. Civ.App., Amarillo, no writ).

The rule stated in McBride v. Briggs was approved by the Supreme Court in Eaton v. Husted, 141 Tex. 349, 172 S.W.2d 493 (1943). The standard was applied in Powell v. Jackson, 320 S.W.2d 20 (Tex. Civ.App., Amarillo, writ ref. n. r. e.), quoting from Eaton v. Husted. (320 S.W.2d 20, 23, col. 2)

It is uncontradicted that Leonard, Jr., and his wife, when they moved into the small house early in 1949, regarded the entire tract of 105.5 acres as their homestead. When they conveyed the ten-acre tract, with the big house occupied by his parents, both of them joined in the deed. Their testimony that the land and improvements conveyed to his parents for $2,300 were worth $6,000 at the time, exclusive of improvements by the parents, is without clear dispute. Leonard, Jr., and his wife testified to negotiations between them and his parents in 1949 that in time led to the conveyancing in April. Upon acquiring legal title to the entire tract of 105.5 acres, Leonard, Jr., joined by his wife, conveyed the ten acres to his parents. It was the testimony of Leonard, Jr. and his wife that they agreed to make this conveyance only after his mother and father agreed to pay off the $2,300 and promised to return the tract to Leonard, Jr. and his wife upon the death of the survivor of his parents.

The trial court made findings in the judgment that the promise was made by the parents and that Leonard, Jr., and his wife relied upon the promise when they deeded the land, and that they would not have conveyed the ten acres but for the promise to return the land to them upon the survivor's death.

The trial court also found, "That the 10 acre tract on April 25, 1949, had a value of $6,000.00 exclusive of any improvements made by the parents."

We must view the evidence most strongly in support of the trial court's judgment. Eaton v. Husted, supra; Briscoe v. Bright's Administrator, 231 S.W. 1082 (Tex.Com.App., opinion adopted by Supreme Court, 1921).

We cannot say as a matter of law that the court was wrong in holding there was sufficient evidence of an agreement preceding the deeds to establish a trust in favor of Leonard, Jr. and his wife. We conclude that the proof made in support of the oral trust as alleged was reasonably clear and certain.

The third point of error is overruled.

Under her fourth and last point of error, Mrs. Magdalene Gause contends that because her husband acquired the land from Leonard, Jr., and his wife for good consideration, the trial court was not at liberty to disregard this fact.

The purpose of this lawsuit is not to set aside or to destroy a deed absolute on its face. This suit was brought to engraft a constructive trust upon land conveyed on an oral promise which the plaintiffs allege was the inducement for making the deed, absolute on its face.

In Faville v. Robinson, 111 Tex. 48, 227 S.W. 938, the Supreme Court held that when a grant is made on the faith of a promise, and because of it, a breach of the promise constitutes a fraud and will not be tolerated in equity although the promise was only verbal. In such cases, the Court held, the interest is obtained on the faith of the promise and the promise enters into the title, and equity will not permit the grantee to hold the title in repudiation of the agreement. In such cases parol evi-

dence will be admitted to establish an express parol trust, notwithstanding the fact the deed is absolute on its face, and without the requirement that there be allegations of fraud, accident, or mistake. Sparks v. Mince, 138 S.W.2d 203 (Tex.Civ.App., Amarillo, no writ); Faville v. Robinson, supra; Faville v. Robinson, 213 S.W. 316 (Tex.Civ.App., San Antonio, affirmed 111 Tex. 48, 227 S.W. 938).

In Faville v. Robinson a daughter brought suit alleging that she was induced to convey to her mother a certain interest in real estate upon the mother's oral representation and promise that at her death she would devise to the daughter her entire interest in the property. The mother afterwards repudiated the agreement, and the daughter sought to have the property impressed with a trust to the extent of the interest she had conveyed.

The Supreme Court held:

"It is clearly and rightfully the rule in this State, as was held by the Court of Civil Appeals, that the title to property acquired under such circumstances is subject to a trust and that the trust may be established by parol. Clark v. Haney, 62 Tex. 511, 50 Am.Rep. 536." (227 S.W. 938, col. 1).

In Mills v. Gray, 147 Tex. 33, 210 S.W.2d 985, the Supreme Court held that a constructive trust arises where a conveyance is induced by the agreement of a fiduciary to hold property in trust for reconveyance and the grantor believes and relies upon such confidant because of the confidential relationship and is thereby induced to execute the deed. Mathews v. Mathews, 310 S.W.2d 629 (Tex.Civ.App., Houston, no writ) at 633, col. 2.

When Leonard, Jr., and his wife conveyed the ten-acre tract to Leonard's father in 1949, Leonard was 24 years old. The confidential relationship between the son and his parents is apparent from the record. It was through his parents that he had been able to acquire the 105.5 acres five years earlier, before he reached his majority. Mrs. Magdalene Gause testified that she and her husband discussed their dealings with Leonard in 1949 before the deeds were made. Her husband told her that he "was not about to give Leonard everything that there was" and would insist that Leonard deed them ten acres, or as much as she needed. The father was a railroad man and often not at home, while the mother operated the place where she kept milch cows and other stock. In the original purchase, in 1945, "mostly all the dealings," the mother testified, were between her and Leonard, Jr. "And that is the way we handled the whole situation," she testified.

Both Leonard, Jr., and his wife were explicit in their testimony as to the negotiations and the final promises that were made before they agreed to convey ten acres with the big house to his father. Rita Mary Gause testified, "We had been arguing that for some time and she [the mother] finally said that, well, they would give us the ten acres back after then, upon the death of the sole survivor."

■ Upon the record we conclude the trial court correctly found that Leonard Gause, Jr., and Rita Mary Gause were entitled to a trust upon the ten-acre tract. The fourth point of error is overruled.

We now consider the sole point of error brought forward by Leonard Gause, Jr. and his wife that it was error to require them to make reimbursement for improvements made by his parents.

The trial court held the ten-acre tract and its improvements were "impressed with a constructive trust in favor of * * * Leonard L. Gause, Jr., and wife, Rita Mary Gause * * * subject to a life estate in favor of * * * Mrs. Magdalene Gause * * *"

The court found that Mrs. Magdalene Gause and her husband made improvements on the ten acres worth $7,000 in and prior to 1949.

Leonard, Jr. and his wife contend the trial court erred in requiring them to make reimbursement for the value that the property will be enhanced by the improvements as of the time of the death of Mrs. Magdalene Gause.

In this contention Leonard, Jr., and wife rely upon authorities holding that a life tenant improves the property at his peril and may not exact from remaindermen contribution for permanent improvements voluntarily made during the life estate. Sparks v. Robertson, 203 S.W.2d 622 (Tex. Civ.App., Austin, writ ref.); Sargeant v. Sargeant, 118 Tex. 343, 15 S.W.2d 589 (Tex.Com.App., 1929, opinion adopted); Collett v. Collett, 217 S.W.2d 60 (Tex.Civ. App., Amarillo, writ ref., n. r. e.).

The life estate of Mrs. Magdalene Gause and her husband did not begin until April 25, 1949, when the ten acres with improvements were conveyed to the father under the circumstances already stated. Prior to that date the entire 105.5 acres of land belonged to Leonard, Jr. and his wife, although record title was in the father.

The trial court did not direct that the ten acres be charged with a lien for improvements made during the life tenancy, although the record shows that some improvements were made by the parents after 1949. The charge upon the ten acres was made on the basis only of improvements made by the parents "in and prior to 1949." The trial court found "That the useful life of the improvements made by the parents is 33⅓ years from September 1, 1949."

As we have stated, the deed from the father to Leonard, Jr., and wife conveying the entire tract of 105.5 acres in April, 1949, recited that its purpose was to place legal title in the grantees who admittedly held equitable title. It is therefore clear that the parents were not claiming they were the owners of title to any part of the land prior to the conveyances of 1949.

It has been held that where permanent improvements were made under the bona fide belief that the improver was owner of the fee title, the improver was entitled to reimbursement before the equitable interest of one suing to establish his interest could be determined. Williams v. Davis, 133 S.W.2d 275 (Tex.Civ.App., Fort Worth, no writ).

It is the general rule in this State that where the true owner seeks the aid of a court of equity to establish ownership, the owner may be required as a condition of the relief sought to compensate for improvements made on the land in good faith under a mistaken belief of ownership. Hurst v. Webster, 252 S.W.2d 793 (Tex. Civ.App., Fort Worth, writ ref. n. r. e.); Christopher v. Garrett, 292 S.W.2d 926 (Tex.Civ.App., Texarkana, writ ref. n. r. e.); Mulholland v. Jolly, 17 S.W.2d 1109 (Tex.Civ.App., San Antonio, writ ref.). See also 57 A.L.R.2d 263, sec. 5, 269.

In Mulholland v. Jolly the court stated the basis for this equitable principle in a quotation from Pomeroy, Equity Jurisprudence, section 1241. The rule there stated and as applied by the courts in the cases cited requires that the improvements be made "innocently and in good faith, though under a mistake as to the true condition of title." The rule is not applicable in this cause. If there was any mistake as to the true condition of title prior to April, 1949, it was clarified and waived by the parents when the entire tract of 105.5 acres was deeded to their son with an express recognition of title in him.

The Supreme Court has held that the rightful owner of land is the owner of the improvements made without his consent, and that the statute entitling a defendant in trespass to try title to pay for his improvements in good faith does not change the common law rule and make the improvements his property. Bonner v. Wiggins, 52 Tex. 125.

In the early case of Saunders v. Wilson, 19 Tex. 201 (1857), the Supreme Court approved the equitable principles of estoppel

and unjust enrichment, independent of the statute, as requiring the true owner, who stood by and suffered improvements to be made on the land "Without notice of his title," to pay for the improvements. To this statement Chief Justice Hemphill added: "I allude to this principle to show that, in cases of this character, the owner may conclude himself by his own acts, and relieve the defendant from the necessity of proving, with such strictness and fullness as would be otherwise required, that he entered under what he believed to be a valid title to the land." The Court then declined to apply the principle to that case and made the decision on other grounds. 19 Tex. 201, 202.

It appears from the judgment of the trial court that the court undertook to adjust the differences between the parties by rules of equity. This undertaking by the trial courts in the cases of Hurst v. Webster, supra, and Christopher v. Garrett, supra, was in each instance approved by the appellate court. Those cases are to be distinguished from the case at bar in that they were suits in trespass to try title with a counter claim by defendant for value of improvements made in good faith.

Mrs. Magdalene Gause has made no claim for reimbursement for improvements made by her and her husband either before or after 1949. In her briefs, filed by two different counsel, she does not reply to the error assigned by Leonard Gause, Jr., and wife assailing the action of the trial court in providing for reimbursement for improvements made in and before 1949. In one brief counsel characterizes the action of the trial court in requiring reimbursement as an indication of "uncertainty about the fact situation" and points out that reimbursement to her estate would not benefit Mrs. Magdalene Gause in her life time. Beyond this reference, no contest is made of the trial court's action by Mrs. Magdalene Gause, and nothing is offered by her in support of that part of the judgment.

We are unable to discover in the record pleadings or facts to support the judgment of the trial court charging the ten acres and improvements with a lien for enhancement measured by improvements made by the parents in and before 1949. We hold that the equitable distribution sought to be made by the trial court is not authorized under the facts of this case.

The judgment of the trial court is in all things affirmed, save and except that part of the judgment charging the ten acres and improvements with an equitable lien in favor of Mrs. Magdalene Gause for improvements made by her and her husband for the lesser of two sums stated in the judgment, which portion of the judgment is reversed and here rendered that Mrs. Magdalene Gause take nothing for such improvements.

The judgment is affirmed in part and in part reversed and rendered.

Affirmed in part and in part reversed and rendered.